# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-0039V
UNPUBLISHED

| | |
|---|---|
| SAUM ESHRAGHI, | Chief Special Master Corcoran |
| Petitioner, | Filed: June 4, 2021 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Findings of Fact; Onset; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for petitioner.*

*Traci R. Patton, U.S. Department of Justice, Washington, DC, for respondent.*

### FINDINGS OF FACT[1]

On January 7, 2019, Saum Eshraghi filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table claim for a shoulder injury related to vaccination ("SIRVA"), or in the alternative a cause-in-fact claim of SIRVA caused by a Tdap vaccine he received on November 1, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find Petitioner's SIRVA Table claim must be dismissed, because onset within the 48 hours following the administration of vaccination (as required to establish a Table injury) cannot be established.

## I.     Relevant Procedural History

After the case's initiation, Respondent filed a status report identifying missing and/or incomplete records and requesting insurance benefits statements from Petitioner's insurance providers, which Petitioner filed over the next several months. ECF 18.

Respondent subsequently filed a status report indicating that he would be "contesting this claim" and proposing a deadline for his Rule 4(c) report, which he filed on June 29, 2020. ECF 32 and ECF 33. In it, Respondent asserted that there is not a preponderance of evidence demonstrating the requisite facts necessary to establish a Table SIRVA injury. In particular, Respondent claimed that "the most contemporaneous documentation does not establish that the onset of [P]etitioner's pain occurred within forty-eight hours of the vaccination." ECF 33 at 7. Respondent further argued that Petitioner could not prove actual causation either, as he had failed to submit an expert report or other preponderant evidence in support of causation sufficient to satisfy his burden of proof. *Id*. at 8 (citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005)).

After holding a status conference with the parties to discuss Respondent's objections to entitlement, I ordered to Petitioner to file a brief to show cause as to why his Table SIRVA claim should not be dismissed. Petitioner filed his brief on January 14, 2021. ECF 35. Respondent filed his response on January 28, 2021. ECF 36. Therefore, this matter is ripe for adjudication.

## II.     Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii).

## III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis,

conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Findings of Fact

I make the following findings after a complete review of the record, including all medical records, affidavits, the arguments in Respondent's Rule 4 report and Petitioner's brief, and any additional evidence filed.

- Petitioner received a Tdap vaccination in his right arm on November 1, 2016, following a head injury. Ex 1 at 8.

- In his affidavit, Petitioner averred that "[w]ithin two to three hours following vaccination, I felt pain in my right shoulder." Ex 7 at 1. Petitioner reiterated this assertion in a supplemental affidavit. Ex 8 at 1.

- In a supplemental affidavit, Petitioner asserts that throughout the day following vaccination his "right shoulder felt sore and tender" and he was "unable to lift [his] arm up past a certain point without feeling pain." Ex 8 at 1.

- On December 21, 2016 (51 days after vaccination), Petitioner presented to his primary care physician (PCP) with a complaint of "back spasm." Ex 3 at 5-6. Petitioner did not report right-sided shoulder pain at this visit. *Id*.

- On February 1, 2017 (three months after vaccination), Petitioner left a phone message for his PCP, stating he "wants to discuss weakness in right arm; he ha[d] a tetnus [sic] shot several months ago in the same area." Ex 11 at 3. Petitioner left another message on April 3, 2017, stating "his shoulder continues to be uncomfortable; he spoke to you a month ago regarding shoulder pain from tetnaus [sic] shot." Ex 11 at 5. He did not visit his PCP after either of these calls.

- On April 21, 2017, Petitioner visited urgent care with a complaint of "constant muscle pain in his neck and back" for two weeks and pain in his

right shoulder "since tetanus shot was given in November." Ex 2 at 5. The Petitioner's right shoulder was examined for the first time since his tetanus vaccination. The physical examination revealed tenderness in the subacromial bursa and decreased abduction. *Id*. X-rays showed no abnormalities and Petitioner was diagnosed with "unspecified sprain" of the right shoulder joint. *Id*.

- On May 1, 2017, Petitioner visited his PCP and complained of intermittent right shoulder pain for "many months." Ex 3 at 3-4. Physical examination revealed findings within normal limits and Petitioner was diagnosed with "shoulder pain." *Id*.

- On June 23, 2017, Petitioner presented for an initial visit with Dr. Russell Petrie, an orthopedist. Ex 3 at 20. Petitioner reported right shoulder discomfort beginning in "November 2016" and weakness starting "about a week" after vaccination, and physical examination showed weakness in the infraspinatus and supraspinatus tendons. *Id*. at 20-23.

- During an initial visit with a physical therapist on August 30, 2017, Petitioner complained of "shoulder pain beginning in November after receiving a tetnis [sic] shot." Ex 5 at 63.

The above medical entries do not corroborate Petitioner's statements regarding onset of his shoulder pain within 48 hours of vaccination. Despite seeking treatment for other musculoskeletal pain[3] at his December 21, 2016 visit with his PCP, Petitioner did not mention his alleged shoulder pain at that time. To explain the omission, he avers that he "thought [he] was having a similar reaction to the shot as [his] mother," who had apparently experienced similar symptoms for months following a tetanus vaccine in 2011. Ex 8 at 2. However, Petitioner also reported in his affidavit that he was suffering "excruciating" shoulder pain at night and that his pain was interfering with his ability to perform many simple, everyday tasks. *Id*. Even if Petitioner expected the pain to eventually diminish, it is unlikely he would have failed to even mention his excruciating shoulder pain (which he alleges was occurring on a daily basis) while seeking care for back pain that he described as occurring only "on and off." Ex 3 at 5-6.

Furthermore, despite Petitioner's allegations regarding the severity of his pain, he did not visit his PCP until more than 5 ½ months after vaccination, and more than 2 ½

---

[3] Petitioner reported back, hip, and buttock pain and back spasms "on and off" since a fall in July 2016. Ex 3 at 5-6.

months after his last phone call to his PCP. Ex 2 at 5-8. While some delay in seeking treatment is relatively common in SIRVA cases,[4] I have also noted that persistent delays established in the medical record can undermine a Petitioner's onset contentions. *Pitts v. Sec'y Health & Human Servs.*, 18-1512V, 2020 WL 2959421 (Fed. Cl. Spec. Mstr. Apr. 29, 2020). Specifically, "[i]t is reasonable to expect that the average Program claimant might seek medical treatment sooner if in fact the person was experiencing sudden post-vaccination pain." *Pitts*, 2020 WL 2959421, at *5. Given the disabling pain Petitioner describes, it would be reasonable to expect that he would have sought treatment earlier, or at a minimum, would have mentioned his pain at the December 21, 2016 visit with his PCP.

Moreover, while Petitioner maintains that the onset of his pain occurred within 2-3 hours of vaccination, his treatment records consistently make generalized references to his shoulder pain beginning after vaccination but without specifying a more precise onset. During his first phone call to his PCP, for example, Petitioner did not make any reference to the onset of his symptoms, instead only stating that he had a tetanus shot "several months ago." Petitioner has also reported pain "from" a tetanus shot, discomfort "beginning" in November, and "since" his shot in November. While such language certainly supports a finding that Petitioner suffered right-sided shoulder pain not long after after his receipt of the Tdap vaccination, it does *not* support a finding that he more likely than not suffered onset of his condition within 48 hours of his vaccination.

I acknowledge that the standard applied to SIRVA claims on the onset issue is fairly liberal. Even in the absence of a direct record, the standard will often permit a determination that onset began within the 48-hour timeframe set by the Table, based on records prepared a few months after vaccination, and/or corroborated by sworn witness statements intended to amplify otherwise-vague records. There are many situations in which compelling testimony may be more persuasive than written records, such as where records are deemed to be incomplete or inaccurate. *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005) ("[w]ritten records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (*quoting Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). But not every SIRVA claim can be so preponderantly established, and certainly

---

[4] *See*, *e.g. Cooper v. Sec'y of Health & Human Servs.*, 16-1387V, 2018 WL 1835179 (Fed. Cl. Spec. Mstr. Jan. 18, 2018); *Marino v. Sec'y of Health & Human Servs.*, 16-622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018).

not where the sequential and contemporaneous record does not lend overall support to the Petitioner's allegations.

Petitioner has provided no reason for me not to conclude that the medical records are correct, and he has otherwise failed to show cause, or provide any argument or explanation in response to my Order to Show Cause, as to the onset of his SIRVA and why his Table claim should not be dismissed. Accordingly, I find there is not preponderant evidence to establish that Petitioner suffered the onset of symptoms within 48 hours of his Tdap vaccination as required by the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(I)(C). However, I also note that the other Table indicia of a valid SIRVA claim *do* seem to exist – meaning that this is likely a viable non-Table claim. To that end, I urge the parties to make one final brief attempt at settlement – as I would anticipate that even after transfer, Petitioner's claim will likely be seen favorably by the special master who receives it.

## V.     Scheduling Order

Petitioner has not preponderantly established that onset of his pain occurred within 48 hours of vaccination. Accordingly, Petitioner's Table SIRVA claim is dismissed. **The parties shall file a final settlement status report on or before <u>Tuesday, July 6, 2021</u>**. The matter shall be transferred thereafter if the parties do not report progress in these efforts.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master
